## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Ryan Martin, Special Agent with Homeland Security Investigations, being duly sworn, state as follows:

## INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code. I have held the position of Special Agent with Homeland Security Investigations (HSI) since December 2020. I completed the three-month Criminal Investigator Training Program and the three-month HSI Special Agent Training courses. I have participated in investigations of diverse crimes, including fraud and money laundering. I have obtained and executed search warrants in the furtherance of investigations. I hold a bachelor's degree in civil engineering from the University of Connecticut and a master's degree in business administration from the University of Colorado. I have served in the Army National Guard in various capacities since September 2000, with eight deployments to Southeast and Southwest Asia and one stateside security mission. My most recent position is that of Special Forces Company Sergeant Major, where I currently manage six operational detachments, a support cell, and one training detachment. I am a graduate of the Joint Special Operations Forces Senior Enlisted Academy.

2. This affidavit is submitted in support of the application made by the United States for a seizure warrant authorizing the seizure of up to $36,500.00 contained within PNC Bank account 3809294756 held in the name of Onecia Baker (the "Target Account").

3. For the reasons stated herein, there is probable cause to believe that the funds contained within the Target Account were obtained knowingly by a scheme or artifice to

defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343 (Wire Fraud), and that these funds therefore are subject to civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and/or 984 and to criminal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, as property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1)). In addition, there is probable cause to believe that the Target Account was involved in money laundering in violation of 18 U.S.C. § 1956 and that the funds contained within the Target Account therefore are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and criminal forfeiture pursuant to 18 U.S.C. § 982(a)(1).

4. The facts in this Affidavit come from my personal observations, my training and experience, witness information, and information obtained from other law enforcement officers. This Affidavit is intended to show merely that there is sufficient probable cause for the issuance of the requested seizure warrant and does not set forth all the information law enforcement officers have learned in this investigation.

## LEGAL BACKGROUND

5. Relevant to this application, a person violates 18 U.S.C. § 1343, when he or she devises a scheme or artifice to defraud or obtains money or property by means of false or fraudulent pretenses, representations or promises, for the purposes of executing the scheme or artifice, and advances or carries out the scheme by transmitting any wire in interstate commerce, or by causing such wire to be transmitted.

6.  Relevant to this application, a person violates 18 U.S.C. § 1956 when he or she conducts or attempts to conduct a financial transaction with the proceeds from specified unlawful activities with the specific intent to promote the specified unlawful activity; evade taxes; conceal the nature, source, location, ownership, or control of proceeds; or avoid reporting requirements. A fraud violation under 18 U.S.C. § 1343 constitutes a "specified unlawful activity" as defined in 18 U.S.C. § 1957(c)(7)(A).

7.  Relevant to this application, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, the United States may pursue civil or criminal forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343. To the extent that the property subject to forfeiture is funds deposited in an account in a financial institution, 18 U.S.C. § 984 provides that the United States need not identify the specific property involved in the offense that is the basis for forfeiture and that any identical property found in the same place or account as the property involved in the offense that is the basis for forfeiture shall be subject to civil forfeiture as long as an action is commenced within one year from the date of the offense. In addition, pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), the United States may pursue civil or criminal forfeiture of property involved in violations of 18 U.S.C. § 1956 or property traceable to such property. *See United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. Apr. 16, 2012) ("Money laundering forfeiture is required for all property 'involved in' the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources.").

8.  Property subject to forfeiture may be seized pursuant to a warrant based on probable cause pursuant to 18 U.S.C. § 981(b) for a civil seizure warrant and pursuant to 21 U.S.C. § 853(f) (by 18 U.S.C. § 982(b)(1)) for a criminal seizure warrant. Section 853(f)

provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that a [protective] order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture."

## STATEMENT OF PROBABLE CAUSE

9. I am currently investigating a fraud scheme in which several individuals, including Onecia Baker (DOB: 3/20/1993) ("Baker") took various steps to defraud at least one known victim, while conducting activities as a scammer and/or money mule as part of a lottery scam fraud scheme.

10. A "lottery scam" scheme is one where individuals coerce victims into paying large sums of money by convincing the victims that they won a lottery or sweepstakes but must first pay fees associated with their winnings before the victims can collect their winnings. The culprits often prey on elderly individuals who they assume have available savings, may be less technologically inclined, and have witnessed companies, such as "Publisher's Clearing House", pay winners large checks on television during their lifetimes. A "money mule" is someone who receives and moves money that came from victims of fraud. Often victims of lotto scams are converted into money mules because of the directions of the fraudster, and often such victims do not realize they are engaged in unlawful activity due to their perceived understanding of the transactions.

11. On September 3, 2024, United Postal Services ("UPS") security personnel notified an HSI task force officer that it had opened a parcel at the UPS Facility in Hartford, CT, in accordance with UPS policy, and had discovered a cashier's check in the amount of $37,000 made payable to Shawn's Transports LLC within the parcel (the "Subject Parcel"). The sender of

4

the Subject Parcel was listed as "Elizabeth Freeman, (859) 492-2434, The UPS Store #6383, Ste 130, 1588 Leestown Rd, Lexington, KY 40511-2007." The consignee of the Subject Parcel was listed as "Mr. Victor CASE, 169 Vine St, Harford, CT 06112-1949." An HSI special agent seized the Subject Parcel, including the cashier's check, as evidence of suspected financial violations. The Subject Parcel contained a birthday card in an envelope, with the return address "677 Bishop Dr., Lexington, KY 40505" written on it, and another envelope, which contained the cashier's check, which listed, "Victor Case, 169 Vine St., Hartford, CT 06112," as the addressee and "Fifth Third Bank, 250 W. Main Street, Suite 100, Lexington, KY 40507-1755," as the return address.

12.     On September 4, 2024, I conducted law enforcement records checks and identified that the phone number listed on the return address of the Subject was associated with Elizabeth Freeman (DOB: 12/7/1952), 677 Bishop Drive, Lexington, Kentucky, 40505 ("Freeman"). I called the phone number and interviewed a woman who identified herself as Freeman. Freeman stated that she believed that she was the victim of a lottery scam, as a result of which she had been coerced into paying approximately $90,000 for what she was told were fees associated with winnings.

13.     Freeman stated that on August 13, 2024, she received a notice via e-mail from patrickanderson.jr009@gmail.com. The e-mail had Bank of America letterhead and stated that Freeman had won a $2,500,000.00 and an additional $5,000.00 per week. Freeman's son-in-law, Anthony Skinner ("Skinner"), provided me with a copy of this notice, which lists "Elizabeth Ann-Jackson Freeman" as the addressee at "677 Bishops Dr., Lexington, KY 40505." The notice states, "Claim(s) must be filed between August 7-19 2024; unclaimed winnings would be withdrawn by the sponsors." There is a list of "Payments Required" totaling $8,580.00 for

5

various fees. It states that winners are chosen from a Procter & Gamble multinational reward program. A contact phone number listed for "P&G" is 717-230-4985.

14. Freeman stated that on August 13, 2024, she received a call from a man who identified himself as Patrick Anderson ("Anderson"), a representative of Procter & Gamble, and who told Freeman that she had won $2,500,000.00, $5,000.00 per week for the rest of her life, and a new vehicle through a Procter & Gamble sweepstakes. Anderson told Freeman that she had to pay fees to receive her winnings.

15. Freeman stated that on August 14, 2024, Anderson sent Freeman a notice claiming to be from the Better Business Bureau, which showed fees she had to pay to receive her sweepstakes winnings. Skinner provided your affiant with a copy of this notice, which shows a letter appearing to be from the Better Business Bureau addressed to "Elizabeth Ann-Jackson Freeman" at" 677 Bishop Dr., Lexington, KY 40505" and states that Freeman is the "certified winner in a Grand Sweepstakes Draw" and that there is an "outstanding amount of ($2,248.00) to be paid." for processing and legal representation. There is contact information for Claim Officer Agent Patrick Anderson at 717-230-4985.

16. Freeman stated that on August 16, 2024, Anderson sent her another notice claiming to be from the Better Business Bureau, which showed additional fees that she had to pay to receive her sweepstakes winnings. Skinner provided your affiant with a copy of this notice, which shows a letter seeming to be from the Better Business Bureau and identifies Freeman's outstanding balance for her Grand Sweepstakes Draw winnings as $23,200.00. The notice again lists Claim Officer Patrick Anderson's contact information as 717-230-4985. The notice states, "You Will Be Asked To Get a Loan From ONEMAIN Financial to cover the Insurance Costs Associated."

17. Freeman stated that on August 16, 2024, Anderson provided her with instructions to deposit a cashier's check payable to Baker in the amount of $13,000 into the Target Account belonging to Onecia Baker, 5085 Ridenour Drive, Colorado Springs, Colorado 80916 to pay additional fees associated with Freeman's sweepstakes winnings. Freeman complied and converted $13,000 into a Fifth Third Bank cashier's check payable to Baker. Freeman then deposited the $13,000 cashier's check into the Target Account at PNC Bank, 280 West New Circle Road, Lexington, Kentucky, 40505. Freeman provided your affiant a photo of the cashier's check and of the PNC deposit transaction receipt associated with the deposit.



**Photo of the $13,000.00 cashier's check payable to Baker**



**Photo of the PNC Bank deposit receipt of $13,000.00 check into the Target Account**

18. Freeman stated that, through Anderson, she spoke to several individuals regarding her alleged sweepstakes winnings, including a woman claiming to be an attorney for Procter & Gamble named Jessica Hale, an individual who went by "Andrew," a man claiming to be a Bank of America ("BoA") representative named Joshua Taylor, and a man claiming to be a Federal Trade Commission investigator named Michael Hemingway ("Hemingway").

19. Freeman stated that on or about August 28, 2024, she received two BoA cashier's checks in United States Postal Service ("USPS") envelopes, each made payable to Freeman and each valued at $850,000.00. Freeman brought one of the cashier's checks to BoA, where a BoA representative told Freeman that the account number shown on the cashier's check was not a

8

BoA account and that the cashier's check was therefore fraudulent. Freeman stated that the second BoA cashier's check was identical to the cashier's check she brought to BoA so she, therefore, surmised that it too was fraudulent. Freeman provided your affiant with photos of one of the cashier's checks and of the one of the USPS envelopes.

20.     Freeman stated that on September 3, 2024, Hemingway instructed her to deposit $23,500 into the Target Account to pay for fees associated with her sweepstakes winnings. Freeman complied and deposited $23,500.00 cash into Target Account at PNC Bank, 280 West New Circle Road, Lexington, Kentucky 40505.



**Photo of the PNC Bank deposit receipt of $23,500.00 cash into the Target Account**

9

21. After being notified of the suspected fraud resulting in the deposits to the Target Account on or about September 5, 2024, PNC Bank voluntarily froze the account.

22. On September 6, 2024, a representative from PNC Bank contacted me and stated that a woman who identified herself as Baker called PNC Bank to find out why she was unable to access funds in the Target Account. The PNC Bank representative obtained a phone number from Baker and provided me with that number, (848) 997-9544.

23. On September 10, 2024, I called (848) 997-9544 and spoke to a woman who claimed to be Baker. In a recorded interview, Baker confirmed that she had received more than $23,000.00 from Freeman. Baker claimed that Freeman was her sister-in-law and that she had loaned Freeman thousands of dollars to go toward home repairs over the past several years. Baker stated that she always gave Freeman cash and never kept any records of the money that she loaned Freeman. Baker stated that she told Freeman to send her money in several small amounts instead of in one large sum so as not to raise any red flags with the bank. Baker provided Freeman's phone number as (859) 492-2434. Baker stated that she was currently in Jamaica and had been living in the United States on an employment visa.

24. After interviewing Baker, I confirmed with Freeman that Freeman did not know Baker prior to August 13, 2024, had never received money from Baker, and was not related to Baker. Freeman's son-in-law, Skinner, also stated that he did not know Baker and that Baker was not a relative of Freeman.

## CONCLUSION

25. Based on the foregoing information set forth above, I respectfully submit that probable cause exists to believe that at least $36,500 contained within the Target Account constitutes proceeds of wire fraud in violation of 18 U.S.C. § 1343 and that the Target Account

was involved in money laundering in violation of 18 U.S.C. § 1956, and that, therefore, the funds contained within the Target Account are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C), 984, and 982 and 28 U.S.C. § 2461.

26.  I am requesting both a civil seizure warrant pursuant to 18 U.S.C. § 981(b) and a criminal seizure warrant pursuant to 21 U.S.C. § 853(f). For purposes of a criminal seizure warrant, an order under 21 U.S.C. § 853(e) may not be sufficient because funds in accounts can be easily withdrawn, moved, or dissipated, leaving them unavailable for forfeiture. PNC Bank could decide to release the subject funds (and has indicated that it will do so after September 20, 2024), and Baker is an unreliable custodian. Additionally, restraining orders served on banks sometimes fail to preserve the property for forfeiture, because the bank representative receiving the restraining order fails to put the necessary safeguards in place to freeze the accounts in time to prevent the account holder form accessing the funds electronically, or fails to notify the proper personnel as to the existence of the order, or the bank exercises its own right of setoff to satisfy an outstanding debt owed to the bank by the account holder. Therefore, I submit that a protective order under 21 U.S.C. § 853(e) would be insufficient to assure that the subject funds will remain available for forfeiture, and a criminal seizure warrant guarantees that they will be in United States custody and control once the warrant is served.

I swear that this information is true and correct to the best of my knowledge.

RYAN D MARTIN
Digitally signed by RYAN D MARTIN
Date: 2024.09.18 17:02:26 -04'00'

RYAN MARTIN
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Transmitted via e-mail and attested to by e-mail in accordance with the requirements of Fed. R. Crim. P. 4.1 on this   20   day of        September        , 2024.

_____
UNITED STATES MAGISTRATE JUDGE